UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 12-10439-GAO

LYNNE F. RILEY, Chapter 7 Trustee,
Plaintiff,

v.

STEVEN R. CRAPSER and FRANCINE S. SHOGEL,
Defendants.

FINDINGS OF FACT, CONCLUSIONS OF LAW,
AND ORDER FOR JUDGMENT
July 28, 2014

O'TOOLE, D.J.

In March 2009 Steven Crapser filed a Chapter 7 bankruptcy petition. The Trustee, Lynne Riley, filed an adversary proceeding against the debtor and his wife, Francine Shogel. On motion of the defendants the reference to the bankruptcy court was withdrawn as to the adversary complaint. After amendment, the complaint consisted of one count seeking to establish resulting trust in property in Maine. Particularly, the Trustee asked the Court to find that Shogel held Crapser's interest in a beach house, which was owned in Shogel's name, in a resulting trust for Crapser and thus for the benefit of the creditors of his bankruptcy estate. The Court conducted a two day bench trial in which two witnesses, Crapser and Shogel, testified. After trial, the parties each submitted proposed findings of fact and conclusions of law. Having considered the evidence and arguments of the parties, the Court now finds and concludes as follows.

**I.   Findings of Fact**

Crapser and Shogel were married on May 27, 1990. It was the second marriage for each; both had children from their previous marriages.

In December 1990 the couple purchased their first marital residence in Holliston, Massachusetts. The property was purchased in both their names, but not in equal shares. Instead, they allocated a 60% interest to Shogel and a 40% interest to Crapser. This division of ownership was intended to allay Shogel's worry about a possible future divorce, she having been traumatized by her prior one.

Throughout the marriage the couple commingled their funds and shared income and support for each other. They maintained a joint bank account, and both joint and individual expenditures were paid from the joint account.

Crapser was the primary earner. Shogel had worked full time as a travel agent until 1998, earning approximately $35,000 per year. In 1999 and 2000, she worked part time, earning $6,064 and $5,324 in those years, respectively. From 2001 to 2009, she did not work and earned no income. Between 1990 and 2001, Shogel occasionally received funds from her father, which were deposited to the joint account. In October 2001, she received an inheritance from her father of approximately $200,000, which was also deposited to the joint account.

Over the period of years from the date of their marriage, Crapser accumulated some assets, and by 1999 had a net worth of approximately $2,200,000, mostly held in retirement funds. But in May 1999, Crapser was laid off from his job at Nypro, Inc. He received a total of $171,538 in wages and severance from Nypro in 1999, all of which was deposited to the joint account. Crapser then started his own business, IQ Consulting, originally a sole proprietorship but later incorporated. He personally guaranteed the debts of IQ Consulting. In calendar year 2000, Crapser earned wages from IQ Consulting in the amount of $135,481.00.

In 2000 Shogel became interested in purchasing a house in Old Orchard Beach, Maine, because her daughter, who had just given birth, had a vacation home there. Shogel wanted to

summer near her daughter and new grandchild. Shogel, who took the lead in the search, located a property for sale at 17 Puffin Street. Shogel signed a purchase and sale agreement for the house in March 2000, agreeing to purchase it for $165,000.

Crapser handled the loan application process with Saco & Biddeford Savings Institution. He completed the loan application and signed as the "borrower" with Shogel signing as "co-borrower." On the loan application, in response to the question "Are you relying on Co-Borrower's Income or Assets?," Crapser answered in the negative. The loan application indicated that the property would be held in Shogel's name only.

In order to fund the down payment, Crapser deposited $51,450 to the joint account from one of his IRAs. Ultimately, both Crapser and Shogel signed a note to the lending bank, but Shogel alone executed the mortgage, consistently with the fact that the title to the property was held by her alone.

The property required some refurbishing. Shogel supervised the work done to the house and its furnishing, while Crapser wrote the checks. The couple enjoyed the property as a vacation home for ten years. Both Crapser and Shogel invited their mutual friends to the Maine Property. Shogel often stayed at the property while Crapser was traveling. Crapser rarely, if ever, made use of the property in the absence of Shogel.

Crapser oversaw the record-keeping and maintenance for the beach house. Crapser also handled the negotiation of three subsequent amendments to the mortgage loan that lowered the interest rate, and paid the fees associated with those amendments. Both signed the amendments. Crapser also managed the maintenance of insurance on the beach house.

In June 2002 Crapser and Shogel sold their primary residence in Holliston and purchased a condominium in Ashland, Massachusetts. Unlike their prior home and the beach house, they took title to the Ashland property as husband and wife, as tenants by the entirety.

During the years 2000-2003, Crapser took a salary from IQ Consulting ranging between $76,000 and $135,000 annually, and as well as benefitting from the profitability of the business. He also supplemented the household income with distributions from his IRAs. By 2004, however, IQ Consulting had encountered serious difficulties. In 2005, Crapser took a salary of only $28,000 and had a business loss of $160,000. Between 2006 and 2008, IQ Consulting continued to sustain substantial losses and Crapser took a very limited salary, funding the household and business expenses largely from his IRAs. By 2009, IQ Consulting was closed, Crapser had depleted his IRAs, and he had personally incurred general unsecured debt of nearly $400,000 and tax debt of over $100,000.

Crapser filed his bankruptcy petition on March 9, 2009. On June 4, 2010—while Crapser's bankruptcy case remained open—the beach house was sold for $350,000. The proceeds from the sale were $292,444.01. The proceeds were used to pay certain favored creditors who were friends or family of Crapser and Shogel, joint tax liability on income earned by Crapser, and other joint debts. The remaining balance was deposited to an investment account held in Shogel's name only.

## II. Conclusions of Law

There is some discussion between the parties as to whether Maine or Massachusetts law applies; however there is no discernible difference with regard to the doctrine of resulting trusts between the two States, and therefore a thorough choice of law analysis is unnecessary. See Lexington Ins. Co. v. Gen. Acc. Ins. Co. of Am., 338 F.3d 42, 46 (1st Cir. 2003) ("It is a well-

established—and prudential—principle that when the result in a case will not be affected by the choice of law, an inquiring court, in its discretion, may simply bypass the choice."). Because the beach house is located in Maine, Maine law applies to the resulting trust claim. See Hill v. Peterson, 82 N.E.2d 11 (Mass. 1948) (applying Rhode Island law in resulting trust action were property was applied in Rhode Island).

In Maine, a resulting trust is an implied trust which arises whenever legal title to property is vested in one person, but the beneficial interest is either wholly or partially in another, or where from the nature of the transaction it is manifest that it was the intent of the parties that the person taking legal title should have no beneficial interest. Sacre v. Sacre, 55 A.2d 592, 597 (Me. 1947). Maine follows the Restatement (Second) of Trusts. Murphy v. United States, 1999 WL 588197 at *5 n.3 (D.Me. 1999). According to the Restatement; "Where a transfer of property is made to one person and the purchase price is paid by another and the transferee is a *wife*, child or other natural object of bounty of the person by whom the purchase price is paid, a resulting trust does not arise unless the latter manifests an intention that the transferee should not have the beneficial interest in the property." Restatement (Second) of Trusts § 442 (1959) (emphasis added).

There is a presumption in favor of a gift. The burden is on the party seeking to establish a resulting trust, here the Trustee, to prove that Crapser did not intend to make a gift of the Maine property to Shogel. The presumption of a gift may be rebutted by evidence such as oral declarations of the payor's intent, the fact this it was improvident for the payor to make a gift under the circumstances, or circumstances showing that the payor had reason to cause title to be taken in the name of another. Id. at § 443. Evidence subsequent to purchase can also be used to demonstrate the intent of the payor at the time of purchase. "Thus, the fact that the payor

5

manages the property, collects rents, pays taxes and insurance, pays for repairs and improvements, or otherwise asserts ownership, and the acquiescence by the transferee in such assertion of ownership, is evidence to rebut the inference of an intention by the payor to make a gift to the transferee." Id.

I conclude that the Trustee has not overcome the presumption of a gift from husband to wife. The Trustee first argues that Crapser acted like the owner of the house in that he made all the payments for it, including the down payment, mortgage, insurance, taxes, and repairs. However, such payments themselves might be regarded as gifts, especially between spouses. When it came to the actual use of the house, the testimony was credible that Shogel always acted as its owner. Shogel was the one who desired a home in Old Orchard Beach, she led the search, was listed as the owner of the house, coordinated the repairs, furnished the house, and stayed there during the summer even while Crapser was traveling for business. Crapser on the other hand had no desire to live in Old Orchard Beach, never or seldom stayed at the house without Shogel, and never invited guests to stay there without Shogel.

The Trustee next argues that Crapser had a reason to not take title in his own name. According to this argument, when the beach house was purchased Crapser had just started a new business and had personal liability for some of the business debts, so there is reason to think that he wanted to shield the house from the reach of creditors. Based on the testimony in this case, I do not find that Crapser sought to maintain a beneficial interest while shielding the asset from creditors.

First, there were no signs of financial difficulties for the couple in 2000 when the house was purchased. Second, Crapser and Shogel credibly testified that because of the previous divorces Shogel was concerned about having her own assets, that was why the ownership of the

6

Holliston house was divided as it was. In 2000 Crapser had accumulated a sizable retirement account while Shogel only had the ownership interest in the Holliston house. Giving her title to the beach house was a way to increase her net worth. Like her larger share in the Holliston home, it was a kind of security for her in case of another divorce.

For these reasons, I conclude that the presumption under Maine law that the beach house was purchased as a gift by a husband for his wife has not been rebutted. Accordingly, a resulting trust did not arise.

## **III.** **Conclusion**

For the foregoing reasons, the Trustee's proof having failed, judgment on the adversary complaint shall enter in the defendants' favor.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.  
United States District Judge